|   |   |   |
|---|---|---|
| 1 |   |   |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| BAHMAN ALIZADEH ASFESTANI, | No. 1:25-cv-1562-SCR |
|---|---|
| Petitioner, |   |
| v. | ORDER |
| CURRENT OR ACTING FIELD OFFICE DIRECTOR, SAN FRANCISCO FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., |   |
| Respondents. |   |

Petitioner is a civil immigration detainee and is representing himself in this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of the undersigned for all further proceedings, including the entry of final judgment. ECF No. 10. For the reasons provided below, the Court grants the petition and orders petitioner's immediate release from custody.

I.   **Factual and Procedural History**[1]

Petitioner was born in Iran and admitted into the United States on November 20, 1984 as a lawful permanent resident ("LPR"). ECF No. 1 at 5; ECF No. 9-1 at 6. He settled in Fresno

---

[1] The facts set out in this section are taken from petitioner's verified § 2241 petition as well as other evidence in the record.

1

County, California where he bought a home, started a family, and built a home improvement and remodeling business. See ECF No. 11 at 15-33 (letters from petitioner's family, friends, and business clients). Petitioner is currently engaged to a U.S. citizen and has three American children. ECF No. 1 at 20-22 (letters from family members).

On February 14, 1995, in Fresno County Superior Court, petitioner was convicted of felony possession of a controlled substance for sale and sentenced to 300 days in jail and 36 months of probation. ECF No. 9-1 at 12-13 (U.S. Customs and Border Protection, U.S. Department of Homeland Security, NNSV Query Result). On June 19, 1995, in Fresno County Superior Court, petitioner was convicted of possession of a controlled substance for sale and possession/purchase of a controlled substance. ECF No. 9-1 at 14. The court sentenced him to ten years in prison for these two felony convictions. Id. Petitioner successfully discharged from state probation on June 18, 2005. ECF No. 1 at 34. Fresno County Superior Court later granted him a Certificate of Rehabilitation on June 8, 2018.[2] Id.

On July 12, 2000, an immigration judge ordered petitioner's removal to Iran based on his felony convictions, pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii). ECF No. 9-1 at 20. Petitioner waived his right to appeal this final order of removal. However, immigration officials could not effectuate petitioner's deportation within "the period prescribed by law." ECF No. 9-1 at 20 (Order of the Immigration Judge); ECF No. 1 at 42. As a result, after spending six months in detention, immigration officials released petitioner on conditions of supervision on October 15, 2000. ECF No. 1 at 40 (INS Order of Supervision).

For 25 years, petitioner reported to immigration officials as instructed. ECF No. 1 at 41, 43-46. In 2024, he filed an application for asylum and withholding of removal with the U.S.

---

[2] Pursuant to California Penal Code § 1203.4, a defendant who "has fulfilled the conditions of probation for the entire period of probation… shall… be permitted by the court to withdraw their plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if they have been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which they have been convicted…." See also Cal. Penal Code § 4852.13(a) (stating that a court's certificate of rehabilitation recommends to the Governor that petitioner receive a full pardon).

Citizenship and Immigration Services ("USCIS").  ECF No. 1 at 5, 38; ECF No. 9-1 at 3 (indicating petitioner filed an affirmative asylum application on July 11, 2024).

On June 22, 2025, petitioner reported as directed to the Fresno Immigrations and Customs Enforcement ("ICE") Sub-Office and was arrested by ICE officers.  ECF No. 9-1 at 3.  He was served with a Notice of Revocation of Release which indicated that his case was "pending review for the issuance of a travel document by a third country."  ECF No. 9-1 at 30-31.  This Notice also informed petitioner that he would "promptly" be afforded an informal interview to respond to reasons for the revocation as well as a subsequent informal interview "within approximately three months of the date of this notice" if he was not released.  ECF No. 9-1 at 30.

Since that date, petitioner has been detained at the Golden State Annex in Kern County, California.  He asserts that he cannot be returned to Iran and that he is neither a flight risk nor a danger to his community based on his economic and family ties to this country.  ECF No. 1 at 5, 15-33 (letters from petitioner's family, friends, and business clients supporting his release from immigration custody and return to the community).[3]  In his § 2241 petition, petitioner contends that his prolonged detention without a bond hearing violates his Fifth Amendment right to due process and his Eighth Amendment right against excessive bail and that he should be immediately released from immigration custody, with appropriate conditions of supervision, if necessary.[4] ECF No. 1 at 12-13.  In the alternative, petitioner asserts that, at a minimum, due process requires that he be afforded a bond hearing before an immigration judge based upon his prolonged detention.  ECF No. 1 at 8.  Specifically, petitioner submits that at such bond hearing, the government should be required to demonstrate by clear and convincing evidence that he is a danger to the community or a flight risk.  ECF No. 1 at 9.

---

[3] Petitioner also attached a copy of his Certificate of Rehabilitation issued by the Fresno County Superior Court on June 8, 2018, which followed his earlier discharge from state probation or parole.  ECF No. 1 at 34.

[4] Respondent Warden of Immigration Detention Facility, who respondents note is technically the "facility administrator at the Golden State Annex," requests that the court strike and dismiss the other respondents from this action.  ECF No. 9 at 1 n. 1.  Given that petitioner has named the proper respondent, it is unnecessary to strike or dismiss the other respondents in order to adjudicate the petition.

3

In their answer to the § 2241 petition, respondents note that petitioner has a final order of removal from July 12, 2000 based on his conviction for an aggravated felony pursuant to INA § 237(a)(2)(A)(iii). ECF No. 9 at 2. Respondents are detaining him pursuant to ICE's discretionary detention authority under 8 U.S.C. § 1231(a)(6) until he can be removed to a third country. Respondents concede that petitioner has been detained beyond the statutory 90-day removal period, but indicate that ICE "is actively pursuing petitioner's removal to a third country, awaiting only travel documents from the third country." ECF No. 9 at 2-3. However, petitioner has no scheduled or pending removal date to this third country. Id. at 4. Respondents never identify this third country, nor have they provided petitioner any opportunity to claim a fear of persecution or torture if removed to such undisclosed third country. According to respondents, petitioner's ongoing detention is lawful because it has not exceeded the presumptively reasonable six-month time period that the Supreme Court identified in Zadvydas, 533 U.S. 678, 701 (2001). Respondents further assert that petitioner has the burden of demonstrating that there is no significant likelihood of his removal in the reasonably foreseeable future in order to be entitled to habeas relief. ECF No. 9 at 4. Absent such proof, according to respondents, petitioner's § 2241 application should be denied.

At the time of the filing of this order, Petitioner has not filed a reply brief and the time to do so has expired.

**II.   Immigration Detention Framework After a Final Order of Removal**

The statutory and regulatory framework governing petitioner's original order of removal, his release on immigration supervision, and the subsequent revocation of his supervision can charitably be described as complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Petitioner was ordered removed to Iran by an Immigration Judge pursuant to Immigration and Nationality Act § 237(a)(2)(A)(iii) due to his conviction for an aggravated felony. See also 8 U.S.C. § 1227(a)(2) (including an aggravated felony conviction as a basis for removal). He was

originally detained in 2000 pending his removal from the United States.

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)). Petitioner's removal order on the basis of his controlled substance convictions—which fall within the "specified grounds" of § 1231(a)(6)—bring him within the scope of this discretionary detention provision.

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692 (2001). Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Regulations issued by the Department of Homeland Security ("DHS") in the wake of

Zadvydas also require administrative review of the ongoing detention of a noncitizen who has a final removal order. See Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14. 2001). After the 90-day removal period has expired, a noncitizen may request a review of whether there is a "significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1). The specific conditions of supervision are described in INA § 241(a)(3) and 8 C.F.R. § 241.5. See 8 C.F.R. § 241.13(h)(1).

Under these regulations, DHS can revoke an order of supervision only when the noncitizen violates a condition of release or when "on account of changed circumstances" DHS "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). Courts have found these regulations to be enforceable in habeas actions. See Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted).

### III. Analysis

#### A. Nature of Petitioner's Claims

As noted above, petitioner asserts a claim under the Due Process Clause of the Fifth Amendment and a claim under the Eighth Amendment. The form petition petitioner utilized challenges his ongoing, prolonged detention "without a hearing" before "a neutral decisionmaker" where his detention must be "justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternative to detention could sufficiently mitigate that risk." ECF No. 1 at 12. This is in the nature of a procedural due process claim and does not expressly invoke either Zadvydas or the regulations implementing Zadvydas. However, petitioner elsewhere expressly notes the government's past failed attempts to deport him to Iran.

Id. at 5. Also, the primary remedy that petition seeks is an order of release, as opposed to a detention hearing before an immigration judge (which petitioner requests as an alternative remedy). Id. at 13. Respondents also treat this as a Zadvydas-type petition in their return brief. ECF No. 9 at 1-2, 3-4. The Court too believes that this case fits most naturally within the constitutional Zadvydas framework and the regulations implementing that decision. Given that petitioner is proceeding pro se and in light of the "scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barrier of form and procedural mazes," Harris v. Nelson, 394 U.S. 286, 291 (1969), the Court accordingly construes the petition as raising Zadvydas-type issues.[5]

### B. Under Zadvydas, Petitioner's Ongoing Detention Violates Due Process

#### 1. Petitioner's Detention is Not Presumptively Reasonable

Respondent notes that petitioner's current period of detention has lasted less than six months at the time he filed the petition and it accordingly remains presumptively reasonable. ECF No. 9 at 4. However, the record demonstrates that petitioner was previously detained for more than three months after his order of removal became final. ECF No. 9-1 at 20 (July 12, 2000 order of removal with appellate waiver); ECF No. 1 at 40 (October 16, 2000 order of supervision). The undersigned joins other courts in finding that this prior period of post-final order detention should be aggregated with the current period of time in determining whether petitioner remains within the presumptively reasonable six-month period. See Nguyen v. Scott, 796 F.Supp.3d 703, 721-22 (W.D. Wash. 2025) (adding prior periods of detention to current period of detention in order to determine whether the petitioner's detention remained presumptively reasonable); Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (explaining that "the six-month period does not reset when the government detains a[ ] [noncitizen] ..., releases him from detention, and then re-detains him again."); Chen v. Holder, No. 6:14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) (finding that

---

[5] Given that those issues must be resolved in petitioner's favor and result in an order of release, the Court need not address petitioner's alternative request for a hearing before an immigration judge or his Eighth Amendment claim.

7

"[s]urely, under the reasoning of Zadvydas, a series of releases and re-detentions by the government ... while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals"). Petitioner's aggregate post-final order detention of approximately nine months is not presumptively reasonable. Zadvydas, 533 U.S. at 701.

### 2. Good Reason to Believe There is No Significant Likelihood of Removal in the Reasonably Foreseeable Future

Once the six-month period of "presumptively reasonable" detention has expired a petitioner seeking release from pre-removal detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. 678 at 701. There is nothing in the record to suggest any likelihood that petitioner will be deported to Iran in the reasonably foreseeable future. Indeed, for more than 25 years respondents have been unable to effect such a deportation, including during the nearly six months of petitioner's current detention. In fact, there is no evidence in the record that respondents are taking any steps to remove petitioner to Iran. While the I-213 form issued upon his arrest states, "Asfestani will be pending removal to his county [sic] of citizen of Iran[,]" ECF No. 9-1 at 7, the concurrently issued "Notice of Revocation of Release" states, "Your case is pending review for the issuance of a travel document by a third country." Id. at 30. In defending this case, respondents emphasize only the prospect of removal to a third country. ECF No. 9 at 2-3. However, there is nothing in the agency declaration about what steps respondents have taken—if any—to effect petitioner's removal to a third country during the nearly six months of his current detention. Moreover, petitioner has a pending affirmative asylum application, in which he also requested withholding of removal, that appears to have not yet been adjudicated by USCIS. ECF No. 9-1 at 6. The existence of such a pending application also contributes to the showing that there is good reason to believe that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future.

### 3. Respondents Have Not Rebutted That Showing

Based on the Court's finding, the burden shifts to Respondents to produce evidence to

rebut the showing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Here, the only information in the record concerning respondents' recent efforts to remove petitioner are the I-213 form issued on June 22, 2025 that states, "Asfestani will be pending removal to his county [sic] of citizen of Iran[,]" ECF No. 9-1 at 7, and the concurrently issued "Notice of Revocation of Release" issued on the same date that states, "Your case is pending review for the issuance of a travel document by a third country." Id. at 30. The agency declaration does not contain so much as a single word purporting to explain what steps ICE has been taking to attempt to secure petitioner's removal since it redetained him nearly six months ago. This silent record reinforces the Court's conclusion that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future.

### C. Petitioner's Redetention is Also Not Authorized by the Applicable Redetention Regulation

ICE has also not demonstrated compliance with the applicable redetention regulation. Petitioner was on supervised release for 25 years after immigration authorities were unable to deport him to Iran. In this circumstance, in order to redetain petitioner under 8 C.F.R. § 241.13(i)(2), respondents must show a change in circumstances such that there is a "significant likelihood that petitioner may be removed in the reasonably foreseeable future[.] See Escalante v. Noem, et al., Case No. 9:25-cv-00182-MJT, 2025 WL 2206113 at *3 (E.D. Tex. Aug. 2, 2025) ("These regulations clearly indicate, upon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed."); Roble v. Bondi, et al., Case No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, Case No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150 n.2 ("Respondents argue that Mr. Nguyen has failed to point to any good reason that his removal is

1  not likely to occur in the reasonably foreseeable future. This is improper burden shifting.
2  Pursuant to its own regulation, 8 C.F.R. § 241.13(i)(2), Respondents must determine changed
3  circumstances such 'that there is a significant likelihood that the alien may be removed in the
4  reasonably foreseeable future.'").

5  The declaration and record provided by respondents in this case do not meet this burden.
6  Respondents don't even attempt to explain how petitioner could be returned to Iran, much less
7  identify a safe third country to which petitioner can be removed within the foreseeable future. As
8  noted above, the absence of such basic information demonstrates to the Court that there is no
9  reasonable likelihood of petitioner's removal within the reasonably foreseeable future. See
10 Nguyen v. Scott, et al., Case No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug.
11 21, 2025) (emphasizing that "generalizations regarding the likelihood that removal will occur" are
12 not sufficient); Hoac v. Becerra et al., Case No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at
13 *3-4 (E.D. Cal. July 16, 2025)).

14 Respondents have failed to comply with their own regulations rendering petitioner's
15 ongoing detention unlawful. "It is a well-known maxim that agencies must comply with their
16 own regulations." United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010). In keeping with
17 the principle, numerous courts have granted habeas relief for ICE's failure to comply with post-
18 order detention regulations. See Nguyen, 788 F. Supp. 3d at 152; Orellana v. Baker, et al., Case
19 No. 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025); M.S.L. v. Bostock, et al.,
20 Case No. 6:25-cv-1204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025); Ceesay v.
21 Kurzdorfer, et al., 781 F. Supp. 3d 137, 164-65 (W.D.N.Y. 2025). Petitioner is accordingly
22 entitled to habeas relief on this alternative ground as well.

23  **D. Relief**

24 As explained above, Petitioner's continued detention is unconstitutional and unlawful
25 under the applicable agency regulation. Therefore, the court grants the petition and orders
26 petitioner to be immediately released on the previously imposed conditions of supervision. See
27 Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5 (conditions for release
28 after removal period). Given that the Court is ordering petitioner's release, it does not reach the

question of whether respondents should have provided petitioner with a pre-detention hearing to determine whether his re-detention was warranted in light of his the liberty interest that accrued during the 25 years of his conditional release.[6] To the extent respondents identify a potential third country of removal for petitioner, the court notes that petitioner is entitled to adequate notice as well as the opportunity to claim a fear of persecution or torture as to such country. See Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999) (holding that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both agency regulations and the constitutional right to due process").

### IV.     Plain Language Summary for Party Proceeding Without a Lawyer

The following information is meant to explain this order in plain English and is not intended as legal advice. The court has reviewed your habeas corpus petition and the record in your case. Your habeas petition is granted and respondents are ordered to immediately release you from immigration detention.

### V.     Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's § 2241 application (ECF No. 1) is granted.

2. Respondents shall immediately release petitioner under the previously imposed conditions of supervision.

3. Respondents shall file a Notice of Compliance within two days of the filing of this order confirming that petitioner has been released from custody. Such notice shall note the exact terms of petitioner's ongoing conditions of supervision.

4. Respondents shall not seek to revoke petitioner's supervision unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i), any other applicable statutes and

---

[6] As judges in related contexts have noted, though "ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." Pinchi v. Noem, et al., Case No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025); see also Doe v. Becerra, et al., 787 F. Supp.3d 1083, 1093 (E.D. Cal. Mar. 3, 2025).

regulations, and the requirements of due process.

    5.  The Clerk of Court shall enter judgment in favor of petitioner and close this case.

DATED: December 18, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE